IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JEFFREY GALBRAITH,

    Petitioner,

v.

THOMAS CAREY, in his capacity as Warden of the California Correctional Institution, in Techachapi,

    Respondent.

    /

No. C 04-03919 WHA

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## INTRODUCTION

In this habeas case, petitioner asserts violations of his *Miranda* rights and his right to effective assistance of trial counsel. For the reasons below, this order **DENIES** the petition.

## STATEMENT

Following a jury trial in Alameda Superior Court, petitioner Jeffrey Galbraith was convicted of second-degree murder and sentenced to prison for fifteen years to life. The state court of appeal affirmed. The California Supreme Court denied review.

On November 17, 1997, petitioner, age 15, and Alvin Richardson, age 16, robbed a furniture store owned by victim Isaias Aparicio. During the robbery, victim was shot and died. On the afternoon following the incident, petitioner obtained treatment at Oakland Children's Hospital for the gunshot wound he sustained during the robbery-homicide. Sergeant Ersie Joyner of the Oakland Police Force testified at trial that Officer T. Pope was dispatched to contact petitioner there pursuant to standard police protocol to investigate the circumstances surrounding such an injury (Exh. C-3 at 64-65, 73). Officer Pope took a statement from

1   petitioner at about 1:00 p.m. without first advising him of his *Miranda* rights (Exh. C-3 at 65).
2   Petitioner lied and stated that three individuals robbed and shot him after he departed a bus in
3   North Oakland earlier that day (Exh. C-3 at 55-56, 68-69).

4   　　　　While at the hospital, Officer Pope learned from Sergeant Joyner, who was investigating
5   the victim's robbery-homicide, that petitioner was a suspect in a shooting.[1]  As per Sergeant
6   Joyner's instructions, Officer Pope maintained custody of petitioner and transported him to the
7   police station for questioning at 4:38 p.m. (Exh. C-3 at 51-53, 65-66).

8   　　　　At the police station, Sergeant Joyner and Sergeant Michael Yoell conducted a two-part
9   interview with petitioner about the victim's murder.  At the start of the first session, Sergeant
10  Joyner read petitioner his *Miranda* rights (Exh. C-3 at 53-55, 66).  Petitioner stated that he
11  understood his rights and consented to speak with Sergeants Joyner and Yoell.  He also signed
12  an agreement to this effect (Exh. B at 455-56; Exh. C-3 at 55, 68).  Sergeant Joyner was aware
13  that petitioner was 15 years old and in ninth grade; he also knew that petitioner was injured and
14  had taken morphine earlier that day (Exh. B at 497-80; Exh. C-3 at 67, 70).  Accordingly,
15  Sergeant Joyner asked petitioner whether he was under the influence of medication at the time.
16  Petitioner replied that he was not (Exh. C-3 at 67).  Petitioner said that he was "thinking real
17  clear" (Exh. B at 479).  Though petitioner also claimed to be in pain, he did not request a
18  doctor, nurse or medication (Exh. C-3 at 68, 70).

19  　　　　Petitioner initially provided Sergeant Joyner the same explanation for his injury as he
20  had given Officer Pope (Exh. C-3 at 55-56).  Yet, he was unable to answer Sergeant Joyner's
21  follow-up questions regarding where he claimed he was shot or which bus line he was allegedly
22  riding.  Petitioner subsequently confessed that the statement was false after Sergeant Joyner
23  expressed skepticism about the account.  Petitioner also admitted that he was shot in the course
24  of the robbery-homicide (Exh. C-3 at 56-58, 72).  The first part of the interview ended at about
25  6:50 p.m. and was unrecorded (Exh. C-3 at 68).

---

28  　　　[1]It is unclear whether Sergeant Joyner contacted Officer Pope before or after he took petitioner's statement (Exh. C-3 at 73).

2

1    The second part of the interview, which was fully recorded, began at 7:00 p.m. and
2 continued until 7:35 p.m. (Exh. B. at 454-82; Exh. C-3 at 60-61). At the end of the session,
3 petitioner confirmed that neither Sergeant Joyner nor Sergeant Yoell threatened, made
4 promises, physically abused or deprived him of water or opportunities to use the bathroom
5 during the interview (Exh. B at 480; Exh. C-3 at 71). The officers then conducted a joint
6 interrogation of petitioner and co-defendant Richardson until 10:37 p.m. At the end of the
7 interrogation, petitioner complained that he was in great pain and needed medication (Exh. B. at
8 405).
9    At trial, petitioner's counsel moved to suppress these statements, alleging that they were
10 taken in violation of petitioner's *Miranda* rights. The trial court denied the motion after finding
11 that the statements were not coerced because petitioner understood and waived his *Miranda*
12 rights (Exh. C-3 at 83-84). In addition, petitioner's counsel did not require the prosecution to
13 establish a prima facie case before acquiescing to the presumption that petitioner had to be tried
14 as an adult rather than a juvenile at any point in the proceedings.

**ANALYSIS**

16    Petitioner brings two claims for habeas relief. He contends that: (1) his *Miranda* rights
17 were violated when Officer Pope elicited an inculpatory statement from him at the hospital
18 without first advising him of his *Miranda* rights, and when Sergeant Joyner elicited involuntary
19 statements from him at the police station after he waived his *Miranda* rights; and (2) his trial
20 counsel rendered prejudicial ineffective assistance in failing to require the prosecution to
21 establish a prima facie case before the presumption that he could not be tried as a juvenile could
22 apply. Neither of these claims is persuasive.

23    **1.    Standard of Review.**

24    This petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996
25 (AEDPA). Under the AEDPA, an application for writ of habeas corpus on behalf of a person in
26 custody pursuant to a state court judgment shall not be granted with respect to any claim
27 adjudicated on the merits in state court proceedings unless the adjudication of that claim:
28       (1) resulted in a decision that was contrary to, or involved
          an unreasonable application of, clearly established federal

3

> law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. 2254(d). A state court's application of law must be objectively unreasonable to warrant habeas relief. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). A state court finding on a dispositive factual question presented in a habeas petition may only be overturned if petitioner presents new evidence for the first time in federal court which constitutes clear and convincing proof that the state court finding was objectively unreasonable. *Lambert v. Blodgett*, 393 F.3d 943, 971-72 (9th Cir. 2004).

The California Supreme Court denied petitioner's habeas claims without comment after petitioner appealed the intermediate appellate court's rejection of these identical claims. In reviewing that decision, this Court views the last reasoned decision on the issue as the basis for the judgment. *See Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000). This Court therefore evaluates the state court of appeal's decision to reject the claims petitioner presently asserts.

Even if the state court did commit constitutional error, however, this Court may not grant relief unless the violation resulted in actual prejudice to the petitioner's case. *See Belmontes v. Brown*, 414 F.3d 1094, 1123 (9th Cir. 2005).

**2.    *Miranda* Violation.**

Petitioner contends that his *Miranda* rights were violated when: (a) Officer Pope elicited an inculpatory statement from him at the hospital without first advising him of his *Miranda* rights, and (b) Sergeant Joyner elicited involuntary statements from him during the interrogation at the police station after reading him his *Miranda* rights.

Respondent asserts that Officer Pope did not take the statement from petitioner under circumstances amounting to custodial interrogation. The state also maintains that petitioner's statements to Sergeant Joyner were voluntary and uncoerced.

Under *Miranda v. Arizona*, 384 U.S. 436, 444 (1966), a suspect must receive certain warnings before a statement he makes during an official custodial interrogation may be admitted as evidence. Specifically, *Miranda* requires interrogators to advise a suspect that he

4

1  has the right to remain silent, that statements made can be used against him, that he has the right
2  to counsel and that he has the right to an appointed counsel.
3      Custodial conditions that trigger *Miranda* advisements consist of a formal arrest or
4  physical restraint of the degree associated with such an arrest. These conditions are satisfied if
5  a reasonable person in the suspect's position would feel unable to terminate the interrogation
6  and leave based on the totality of the circumstances. *Stansbury v. California*, 511 U.S. 318,
7  322, 321-24 (1994). Several factors relevant to this determination are "the extent to which [the
8  person being questioned] is confronted with evidence of guilt" and "the degree of pressure
9  applied to detain the individual." *United States v. Booth*, 669 F.2d 1231, 1235 (9th Cir. 1981).
10 Interrogation requiring *Miranda* advisements involves "questioning . . . including 'words or
11 actions on the part of the police (other than those normally attendant to arrest and custody) that
12 the police should know are reasonably likely to elicit an incriminating response from the
13 suspect.'" *Pope v. Zenon*, 69 F.3d 1018, 1023 (9th Cir. 1996) (internal citation omitted).
14     After being properly advised, a suspect may waive his *Miranda* rights provided that it is
15 done voluntarily, knowingly and intelligently. *Miranda*, 384 U.S. at 475. In the case of
16 juveniles, whether a waiver is valid depends on the totality of the circumstances, including the
17 minor's background, experience, age, education, intelligence, and capacity to understand the
18 warnings, the nature of the Fifth Amendment rights and the consequences of waiving those
19 rights. *Fare v. Michael C.*, 442 U.S. 707, 725 (1979).
20         **a.    Officer Pope's Questioning.**
21     Petitioner alleges that Officer Pope violated his *Miranda* rights by eliciting an
22 inculpatory statement from him at the hospital without first advising him of these rights.
23 Specifically, petitioner contends that Officer Pope elicited the false statement that petitioner
24 was robbed and shot after departing a bus in North Oakland on the day of the robbery-homicide.
25     The state court of appeal reasonably determined that Officer Pope's interaction with
26 petitioner did not require a *Miranda* warning. Officer Pope likely did not take petitioner's
27 statement under circumstances amounting to a custodial interrogation. Sergeant Joyner testified
28 that on the day of the incident, Officer Pope contacted petitioner at the hospital pursuant to a

routine protocol to investigate the injury, just as in all other instances in which patients are admitted for gunshot wounds. Nothing indicates that Officer Pope prevented petitioner from leaving the hospital or otherwise detained him prior to or during the statement. Furthermore, no evidence suggests that Officer Pope interrogated petitioner with the expectation of receiving an incriminating response. In sum, the state court of appeal reasonably observed that "[t]he coercive circumstances of custodial interrogation, which trigger the need for the prophylaxis of the *Miranda* warnings, are simply not present here" (Exh. F at 23-24).

Even if Officer Pope's questioning qualified as a custodial interrogation, his failure to provide the *Miranda* advisements would not have prejudiced petitioner's case. Petitioner made the same statement at issue to Sergeants Joyner and Yoell after expressly waiving his *Miranda* rights at the police station later that day. Petitioner also voluntarily told Sergeant Joyner that the statement was false after Sergeant Joyner confronted him about the problems the statement contained. As such, the prosecution would have been able to introduce the same evidence at trial regardless. Moreover, the statement petitioner provided Officer Pope was not even inculpatory. Therefore, even if Officer Pope's actions constituted error, it was harmless.

### b. Sergeant Joyner's Questioning.

Petitioner further alleges that Sergeant Joyner elicited involuntary statements from him during the interrogation at the police station, thereby violating his *Miranda* rights.

The state court of appeal reasonably concluded that Sergeant Joyner did not elicit involuntary statements from petitioner because petitioner legitimately waived his *Miranda* rights before the interrogation. Though petitioner was fifteen-and-a-half years old at the time, in pain from his recent gunshot wound, and had taken medication at the hospital earlier that day, his statements were voluntary and informed. After the *Miranda* warnings, petitioner stated that he understood his rights, consented to speak with Sergeants Joyner and Yoell, and signed an agreement to this effect. As a ninth grader, petitioner certainly would have comprehended these warnings and his decision to waive his rights. Petitioner also told the sergeants that he was "thinking real clear" and that the medication he had taken several hours earlier had worn off when the interview began. Moreover, petitioner's statements to the sergeants were not involuntary or coerced. Neither Sergeant Joyner nor Sergeant Yoell threatened petitioner,

6

1  promised him anything, physically abused him, prevented him from using the bathroom or
2  getting a drink of water during the interview. Petitioner did not request medication until the
3  interrogation ended. In short, Sergeant Joyner did not elicit statements from petitioner in
4  violation of his *Miranda* rights because petitioner voluntarily told the sergeants about his
5  participation in the robbery-homicide after waiving his rights.

### 3. Ineffective Assistance of Trial Counsel.

Petitioner also seeks habeas relief based on his trial counsel's alleged ineffectiveness at the juvenile court proceedings in failing to require the prosecution to establish a prima facie case before the presumption that petitioner could not be tried as a juvenile could apply.

The Sixth Amendment entitles criminal defendants to the effective assistance of trial counsel. To establish that counsel provided ineffective assistance, defendants must show that: (1) counsel's performance was deficient under the standards of reasonable lawyering, and (2) there is reasonable probability that, but for counsel's ineffectiveness, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Strickland v. Washington*, 466 U.S. 664, 694 (1984). Review of a counsel's actions or omissions is highly deferential: a counsel's actions are deemed effective unless a reasonable lawyer would not act in the challenged manner when faced with the same circumstances as presented in the instant case. *Coleman v. Calderon*, 150 F.3d 1105, 1113 (9th Cir. 1998).

Petitioner asserts that his trial counsel provided ineffective assistance in light of the following laws and facts associated with the juvenile court proceedings. In California, the juvenile court system ordinarily has jurisdiction over any individual under 18 years of age who violates a criminal law. Cal. Welfare & Institutions Code § 602(a). The criminal court system has jurisdiction if an accused minor is deemed unfit for treatment under juvenile court law or is accused of certain serious crimes. *Marcus W. v. Superior Court*, 98 Cal. App. 4th 36, 40 (2002).

When petitioner was charged in November 1997, then Welfare and Institutions Code § 707(e) applied to cases in which a minor between ages 14 and 16 was accused of committing murder "while not the actual killer, . . . acts with reckless indifference to human life and as a

7

1    major participant in a felony enumerated in paragraph (17) of subdivision (a) of [Penal Code]
2    section 190.2 . . . ." Paragraph (17) references the felony of murder "committed while the
3    defendant was engaged in, or was an accomplice in, the commission of, attempted commission
4    of, or the immediate flight after committing...[r]obbery in violation of Section 211 or 212.5."[2]
5    A minor who participated in such a crime was presumed unfit for treatment in juvenile court
6    unless he could prove that juvenile court treatment was nonetheless proper.[3]

7          The prosecution requested a fitness hearing in juvenile court under Welfare and
8    Institutions Code § 707. This obligated the juvenile court to require the probation officer to
9    investigate and submit a report on petitioner's behavioral patterns and social history. Cal.
10   Welfare & Institutions Code § 707. When these hearings were held on October 21, 1998, and
11   January 12-13, 1999, petitioner knew that he had the burden of rebutting the presumption of
12   unfitness by a preponderance of the evidence (Exh. C-2 at 52-54).

13         Petitioner's trial counsel, however, could have relieved petitioner of this burden.
14   Because the prosecution had charged petitioner with a crime triggering the presumption of
15   unfitness, petitioner could have first required the prosecutor to establish a prima facie case
16   before the presumption could apply. *Marcus W.*, 98 Cal. App. 4th at 41. A "prima facie" case
17   amounts to "sufficient cause" within the meaning of Penal Code Sections 871 and 872, which is
18   generally equivalent to "reasonable and probable cause," or the state of facts that would lead an
19   ordinary person "to believe and conscientiously entertain a strong suspicion of the guilt of the
20   accused." *Edsel P. v. Superior Court*, 165 Cal. App. 3d 763, 780 n.10 (1985).

21         Accordingly, petitioner alleges that his trial counsel rendered ineffective assistance in
22   failing to require the prosecution to establish a prima facie case. He asserts that this failure was
23   prejudicial because the prosecution would not have been able to make out a prima facie case if

---

[2] California Penal Code § 211 provides that: "Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accompanied by means of force or fear." California Penal Code § 212.5 distinguishes between first- and second-degree robbery.

[3] At the time petitioner was tried, California Welfare & Institutions Code § 707(e) directed the juvenile court to consider: (1) the degree of criminal sophistication exhibited by the minor; (2) whether the minor could be rehabilitated prior ro the expiration of the juvenile court's jurisdiction; (3) the minor's previous delinquent history; (4) success of prior attempts by the juvenile court to rehabilitate the minor; and (5) the circumstances and gravity of the offenses allegedly committed by the minor.

8

his counsel had correspondingly sought to suppress the inculpatory statements on voluntariness grounds in juvenile court. In his opening brief for the state court of appeal, petitioner maintained that the prosecution's burden in "establishing a prima facie case without reliance on the inherently untrustworthy evidence of the coerced confession" would have been "extremely difficult" (Exh. D at 8-9). Thus, petitioner posits that the juvenile court would have granted a motion to suppress the inculpatory statements as involuntary if counsel had made such a motion, which would have greatly jeopardized the prosecutor's ability to establish such a case.

The state court of appeal reasonably concluded that trial counsel's error did not prejudice petitioner's case. As discussed above, petitioner's inculpatory statements to Sergeants Joyner and Yoell were not taken in violation of his *Miranda* rights. Thus, had trial counsel required the prosecutor to establish a prima facie case, these statements would have been introduced, and a motion raised by trial counsel to suppress them would have been denied. The prosecutor would have then proceeded to use these statements to establish such a case.

The prosecutor would have succeeded. The following statements establish that petitioner was a major participant in the robbery and acted with reckless disregard for human life in the course of the crime. Petitioner and Richardson agreed to rob the store together prior to the event (Exh. C-3 at 13, 56-58). Petitioner stated he "wanted the money . . . needed the money" to buy his mother a VCR and groceries (Exh. B at 122; Exh. C-3 457, 463). Petitioner was aware that Richardson had a gun when he "got to the store" (Exh. B at 461). After arriving, petitioner served as a lookout at the front of the store while Richardson pushed the owner to the rear (Exh. C-3 at 58-59, 63). Petitioner then went to the back of the store to assist Richardson (Exh. C-3 at 59-60). During that time, Richardson fought with Aparicio until gunshots were fired and Aparicio was killed (Exh. C-3 at 59, 63). As such, the prosecutor likely could have established a prima facie case that petitioner violated Cal. Penal Code § 190.2(a)(17), as stated above. Therefore, even if the trial counsel had rendered ineffective assistance in failing to require the prosecution to establish a prima facie case, the error likely did not lead the court to rule less favorably with respect to petitioner.

9

**CONCLUSION**

The writ is **DENIED**. Judgment will be entered in favor of respondent.

**IT IS SO ORDERED.**

Dated: September 16, 2005

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE